Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| COMUNIDADES PROTECTORAS DEL RÍO PIEDRAS INC., EN REPRESENTACIÓN DE LOS VECINOS DEL RÍO PIEDRAS, FRANCES ALEMÁN FERNÁNDEZ, DINARY CAMACHO SIERRA, LYDIA PUENTE COLÓN, ELSA RORÍGUEZ LÓPEZ, JOSÉ JIMÉNEZ MONROIG, ROSARIO CALERÓN JULIA, JUAN DE DIOS ANGULO BALLESTEROS, EDDIE ANTÚNEZ REYES, EVA L. ARZOLA DELGADO, GRACIELA JOSELIN BELAVAL BRUNO, ANA DESEDA BELAVAL, GRACE M. DÍAZ PASTRANA, ARNALDO FIGUEROA FIGUEROA, DANIEL GONZÁLEZ CHACÓN, SOFÍA GONZÁLEZ URRUTIA, ROBERTO MALDONADO NIEVES, VLADIMIR MORALES RIVERA, ERMINIA PINEDA-MUNTAL, ERNESTO CALRO LLAVONA, MADELAIN ROMERO FRESNEDA, MARÍA E. HERNÁNDEZ TORRALES, MARYLIN MÁRTIR GAYA, MIGDALIA RAMOS RODRÍGUEZ, PEDRO DELIZ BENIQUEZ, RICARDO VÉLEZ GONZÁLEZ, VANESSA GIRALDI MENA Y VANESSA DEL C. IRIZARRY

Apelantes

v.

DEPARTAMENTO DE RECURSOS NATURALES Y AMBIENTALES, UNA INSTRUMENTALIDAD DEL ESTADO LIBRE ASOCIADO DE PUERTO RICO; MUNICIPIO AUTÓNOMO DE SAN JUAN; UNIVERSIDAD DE PUERTO RICO; SUTANO Y MENGANO, PERSONAS JURÍDICAS NATURALES CON INTERÉS EN EL PROYECTO DE CONTROL INUNDACIONES DEL RÍO PIEDRAS

Apelados | KLAN202500184 | *APELACIÓN* Procedente del Tribunal de Primera Instancia, Sala Superior de San Juan

Caso núm.: SJ2024CV06782

Sobre: INJUNCTION (ENTREDICHO PROVISIONAL, INJUNCTION PRELIMINAR Y PERMANENTE) Y OTROS |

Panel integrado por su presidente, el Juez Rodríguez Casillas, el Juez Marrero Guerrero, el Juez Campos Pérez y el Juez Robles Adorno.[1]

---

[1] Véase OATA-2025-170 del 3 de septiembre de 2025 en la que se designa al Juez Robles Adorno en sustitución del Juez Sánchez Báez.

Núm. Identificador:
RES2025_____

Robles Adorno, Juez ponente.

**SENTENCIA**

En San Juan, Puerto Rico, a 5 de diciembre de 2025.

El 4 de marzo de 2025, Comunidades Protectoras del Río Piedras, Inc., en representación de los vecinos de Río Piedras, *et al.*, (en adelante, la parte apelante) instó ante nos el presente recurso de *Apelación* en el que solicitó que revoquemos la *Sentencia,* emitida y notificada el 29 de enero de 2025 por el Tribunal de Primera Instancia, Sala Superior de San Juan (TPI o foro primario).[2] En el aludido dictamen, el TPI desestimó la *Demanda* presentada por la parte apelante por falta de parte indispensable.

Por los fundamentos que exponemos a continuación, confirmamos la *Sentencia* apelada.

**I.**

El caso de autos tuvo su origen cuando el 22 de julio de 2024, la parte apelante presentó una *Demanda* en contra del Departamento de Recursos Naturales y Ambientales (DRNA), el Municipio Autónomo de San Juan (el Municipio) y la Universidad de Puerto Rico (UPR) (en conjunto, la parte apelada). En síntesis, arguyó que el DRNA suscribió un contrato intitulado, *Project Cooperation Agreement Between the Department of the Army and the Department of Natural and Environmental Resources of the Commonwealth of Puerto Rico for Construction of the Rio Puerto Nuevo Flood Control Project* (el Contrato), con el Cuerpo de Ingenieros del Ejército de Estados Unidos (el Cuerpo de Ingenieros). Sostuvo que, en dicho contrato, el DRNA le encomendó al Cuerpo de Ingenieros el desarrollo de un proyecto de canalización en terrenos que forman parte del Corredor Ecológico de San Juan.

---

[2] Entrada Núm. 62 del caso SJ2024CV06782 en el Sistema Unificado de Manejo y Administración de Casos (SUMAC).

Asimismo, alegó que, la propuesta del referido proyecto no contenía una declaración de impacto ambiental ni contaba con los permisos exigidos por la *Ley para la Reforma de Permiso de Puerto Rico*, Ley Núm. 161-2009, según enmendada, 23 LPRA sec. 9011 *et seq.* Ello, pues adujo que afectaría terrenos de alto valor ecológico. Por tanto, solicitó que el foro primario emitiera un remedio interdictal para prohibir el proyecto de canalización, así como una sentencia que lo declare ilegal.

El 23 de julio de 2024, el foro primario emitió y notificó una *Orden* en la que le ordenó a la parte apelante que mostrara causa por la cual no se debía desestimar la *Demanda* toda vez que, tomando como ciertas las alegaciones, el Cuerpo de Ingenieros era una parte indispensable en el pleito.[3]

El 24 de julio de 2024, la parte apelante instó una *Moción en Cumplimiento de Orden para Demostrar que el Cuerpo de Ingenieros del Ejército de los Estados Unidos de América No Es Parte Indispensable en Este Litigio*.[4] Arguyó que, el Cuerpo de Ingenieros no tenía autoridad sobre el DRNA y que el Contrato establecía que era la referida agencia la que tenía el deber de velar que se cumplieran las leyes aplicables. Asimismo, adujo que los fondos destinados para el proyecto y la labor encomendada al Cuerpo de Ingenieros, no se afectaría si se paralizaba el proyecto dado que en una reunión celebrada el 24 de enero de 2025 en sus oficinas, el Cuerpo de Ingenieros había manifestado que, si las comunidades se oponían a la construcción, destinaría dichos fondos para sufragar otro proyecto. Consecuentemente, rechazó que fuera una parte indispensable, sino que era una parte acumulable. No obstante, solicitó un término para enmendar la *Demanda* a los fines de incluir

---

[3] Entrada Núm. 2 del caso SJ2024CV06782 en el SUMAC.
[4] Entrada Núm. 3 del caso SJ2024CV06782 en el SUMAC.

al Cuerpo de Ingenieros, si fuera necesario. Ante ello, ese mismo día, el foro primario se dio por enterado.[5]

El 7 de agosto de 2024, el Municipio presentó una *Moción en Cumplimiento de Orden y en Solicitud de Desestimación.*[6] Argumentó que, la causa de acción no justificaba la concesión de un remedio de su parte toda vez que, el proyecto de canalización surge del Contrato suscrito entre el DRNA y el Cuerpo de Ingenieros y, por tanto, este no debía participar del pleito. En adición, señaló que era el DRNA el encargado de gestionar los permisos y trámites correspondientes y que, como cuestión de hecho, el Municipio estaba impedido de realizar trámite alguno. Siendo así, solicitó la desestimación de la *Demanda* en su contra.

El 14 de agosto de 2024, la parte apelante interpuso una *Oposición a Moción de Desestimación y Solicitud de Permiso para Enmendar la Demanda.*[7] En síntesis, sostuvo que el Municipio tenía la responsabilidad de salvaguardar y proteger el ambiente dentro de su demarcación territorial y la salud de sus ciudadanos. Asimismo, razonó que, el proyecto de canalización no mitigaba la causa real de las inundaciones en San Juan y era conocido por el Municipio. Ello, dado que el Municipio era beneficiario del Contrato entre el Cuerpo de Ingenieros y el DRNA, y ostenta la posesión de terrenos afectados por la construcción, debía ser considerado parte indispensable. Empero, en la alternativa, solicitó la autorización del TPI para enmendar la *Demanda* e incluir una solicitud de remedios específica de parte del Municipio.

Ese mismo día, el DRNA presentó una *Moción Solicitando Desestimación por Falta de Jurisdicción Sobre la Persona* en la que arguyó que el foro primario carecía de jurisdicción sobre su persona puesto que no se incluyó como parte al Estado Libre Asociado de

---

[5] Entrada Núm. 4 del caso SJ2024CV06782 en el SUMAC.
[6] Entrada Núm. 20 del caso SJ2024CV06782 en el SUMAC.
[7] Entrada Núm. 25 del caso SJ2024CV06782 en el SUMAC.

Puerto Rico (Estado) ni se había emplazado al Secretario de Justicia, según lo exigen las Reglas de Procedimiento Civil, 32 LPRA Ap. V, ya que el DRNA era una instrumentalidad del Estado.[8]

El 15 de agosto de 2024, el TPI emitió y notificó una *Orden* en la que autorizó la solicitud de la parte apelante para enmendar la *Demanda*.[9]

Por su parte, el 19 de agosto de 2024, la UPR presentó una *Moción en Cumplimiento de Orden y de Desestimación*.[10] En síntesis, planteó que, en la causa de acción, no se solicitaban remedios en su contra y no se veían afectados derechos de su parte.

El 21 de agosto de 2024, la parte apelante presentó una *Moción en Oposición a Moción de Desestimación e Informando Notificación del Emplazamiento al Secretario de Justicia Según Lo Requ[i]ere la Regla 4.4(g) de las de Procedimiento Civil* en la que sostuvo que las Reglas de Procedimiento Civil, *supra*, no mandatan que es requerido la notificación simultánea ni el emplazamiento formal del Secretario de Justicia.[11] Asimismo, señalo que, la falta de notificación al Secretario de Justicia fue por un error, y ya había sido subsanada por cuanto había sido emplazado el 20 de agosto de 2024.

Igualmente, alegó que la desestimación solicitada por el DRNA era por insuficiencia en el emplazamiento y no por falta de jurisdicción sobre la persona. En cuanto a ello, esgrimió que la notificación realizada al Secretario de Justicia ya había sido subsanada y resaltó que solo habían transcurrido veintitrés (23) días desde la emisión de los emplazamientos. No obstante, solicitó la autorización del foro primario para enmendar la *Demanda* a los

---

[8] Entrada Núm. 27 del caso SJ2024CV06782 en el SUMAC.
[9] Entrada Núm. 30 del caso SJ2024CV06782 en el SUMAC.
[10] Entrada Núm. 31 del caso SJ2024CV06782 en el SUMAC.
[11] Entrada Núm. 35 del caso SJ2024CV06782 en el SUMAC.

fines de incluir al Estado como parte, de este ser entendido como una indispensable.

Cónsono con ello, y tras la autorización del TPI,[12] el 21 de agosto de 2024, la parte apelante presentó una *Moción Sometiendo Segunda Demanda Enmendada para Incluir al Estado Libre Asociado como Codemandado para Efectos de Notificación Según Requerido por la Regla 4.48 [sic] (g), de las de Procedimiento Civil y Desestimando las Reclamaciones de los Codemandantes Pedro Borrás Rodríguez y Cynthia Manfred Fernández* en la que anejó la *Segunda Demanda Enmendada.*[13]

El 26 de agosto de 2024, la parte apelante presentó una *Oposición a Moción de Desestimación.*[14] Esencialmente, rechazó la contención de la UPR en cuanto a que no era parte indispensable en el pleito. Específicamente, indicó que era inmaterial si el Cuerpo de Ingenieros era parte indispensable, y lo medular era si la UPR debía permitir el uso de sus terrenos para la construcción, sería parte del desastre ecológico señalado, ya que la UPR era propietaria y custodia de terrenos designados como parte del proyecto de construcción. Asimismo, rechazó que procediera la desestimación bajo la Regla 10.2 (5) de Procedimiento Civil, *supra*, debido a que en la *Demanda enmendada* fueron aclarados y especificados los remedios solicitados de parte de la UPR.

Por su parte, el 27 de agosto de 2024, el Municipio presentó una *Réplica a "Oposición a Moción de Desestimación y Solicitud de Permiso para Enmendar la Demanda"* en la que reiteró el planteamiento de que el Municipio no tenía la facultad para emitir un permiso con relación a las obras del proyecto de canalización.[15] En esa línea, especificó que lo único que el Municipio había

---

[12] Entrada Núm. 36 del caso SJ2024CV06782 en el SUMAC.
[13] Entrada Núm. 37 del caso SJ2024CV06782 en el SUMAC.
[14] Entrada Núm. 39 del caso SJ2024CV06782 en el SUMAC.
[15] Entrada Núm. 41 del caso SJ2024CV06782 en el SUMAC.

atendido, que podía estar indirectamente relacionado con la construcción, fue una preconsulta de edificabilidad para la instalación de una oficina temporera para una compañía contratista con el fin de que pudiera servirse de energía eléctrica, agua y telecomunicaciones.

Tras varios incidentes procesales, el 4 de diciembre de 2024, el DRNA presentó una *Oposición a Solicitud de Injunction Preliminar* en la que enfatizó que los informes preparados por el Cuerpo de Ingenieros reflejan que el proyecto de canalización incluye medidas específicas para mitigar los impactos ambientales, como la reducción de concreto, la reforestación de árboles y la restauración de hábitats.[16] Con ello, adujo que derrotan las alegaciones sobre la naturaleza e irreparabilidad de los daños esgrimidos por la parte apelante. Por ende, adujo que el remedio interdictal era improcedente.

En igual fecha, el TPI celebró una Vista Argumentativa, cuya *Minuta* obra en el expediente, para dilucidar si procedían las mociones dispositivas presentadas y que, de estas no ser procedentes, celebraría la vista de *injunction* en sus méritos posteriormente.[17]

El 16 de diciembre de 2024, la parte apelante presentó una *Réplica a Oposición de Injunction Preliminar Presentado por la Demandada Departamento de Recursos Naturales y Ambientales (DRNA) y Solicitud de Vista.*[18] En síntesis, sostuvo que el DRNA argumentó sustancialmente los méritos de la causa de acción en su escrito y ello estableció su sumisión voluntaria a la jurisdicción del TPI, de asumirse que el emplazamiento fue defectuoso.

Así las cosas, el 29 de enero de 2025, el foro primario emitió y notificó una *Sentencia* en la que resolvió que el Cuerpo de

---

[16] Entrada Núm. 57 del caso SJ2024CV06782 en el SUMAC.
[17] Entrada Núm. 59 del caso SJ2024CV06782 en el SUMAC.
[18] Entrada Núm. 60 del caso SJ2024CV06782 en el SUMAC.

Ingenieros era parte indispensable en el litigio debido a que se solicitaba la paralización de un proyecto de construcción que surgió mediante el Contrato suscrito entre este y el DRNA y, por tanto, era una parte indispensable. [19] Así pues, desestimó la causa de acción instada y declaró *Ha Lugar* las solicitudes de desestimación.

Inconforme, el 4 de marzo de 2025, la parte apelante presentó ante este Tribunal un *Escrito de Apelación* y señaló al TPI por la comisión de los siguientes errores:

> Primer error: El Tribunal de Primera Instancia (TPI) erró al determinar, sin referencia a derecho alguno, que el Cuerpo de Ingenieros del Ejército de los Estados Unidos (USACE) es una parte indispensable en una demanda con solicitud de *injunction* y sentencia declaratoria que busca la paralización de un proyecto pactado mediante un Acuerdo de Colaboración entre el Gobierno Estatal y el Gobierno Federal.

> Segundo error: El TPI incurrió en error al establecer que "el nivel involucramiento y responsabilidad del USACE en el pleito que nos ocupa es tal que nos impediría emitir un dictamen sin que sus intereses se vean afectados", sin basarse en los hechos alegados en la demanda ni en las disposiciones del contrato entre el Departamento de Recursos Naturales y Ambientales (DRNA) y el USACE.

> Tercer error: El TPI erró al concluir que los suscribientes del Acuerdo de Colaboración eran las únicas partes que podrían resultar afectadas por el dictamen emitido, ignorando los intereses de las comunicaciones y los recursos naturales involucrados.

> Cuarto error: El TPI determinó, sin discutir los argumentos de derecho presentados, que el tribunal no adquirió jurisdicción sobre el DRNA y, como consecuencia, procedió a acoger su moción de desestimación. Esta conclusión se alcanzó sin una evaluación adecuada de los hechos y las circunstancias procesales.

> Quinto error: El TPI desestimó la demanda contra el Municipio de San Juan (MSJ) y la Universidad de Puerto Rico (UPR) sin analizar las alegaciones presentadas ni identificar el derecho aplicable que justificara tal decisión.

El 26 de marzo de 2025, el Municipio de San Juan presentó un *Alegato en Oposición*. Igualmente, el 15 de abril de 2025, la UPR interpuso un *Alegato en Oposición a la Apelación*. Por su parte, y tras varios trámites procesales,[20] el 16 de julio de 2025, el DRNA

---

[19] Entrada Núm. 62 del caso SJ2024CV06782 en el SUMAC.

[20] Entre los cuales destacamos que concedimos dos (2) prórrogas al DRNA para presentar su escrito en oposición. *Véase* la *Resolución* emitida el 13 de mayo de 2025 y notificada el 16 de mayo de 2025, y la *Resolución* emitida el 14 de julio de 2025 y notificada el 15 de julio de 2025.

presentó su *Alegato en Oposición a la Apelación*. Igualmente, cabe destacar que, ese mismo día, la parte apelante presentó ante nos una *Moción Para Que Se Tome Conocimiento Judicial de la Ordenanza Núm. 36 y se Reconsidere la Prórroga Concedida al DRNA*.

Con el beneficio de la comparecencia de todas las partes, así como de la totalidad del expediente que obra ante nos, procedemos a disponer del presente asunto, no sin antes delimitar la normativa jurídica aplicable.

## II.

Como es sabido, la Regla 10.2 de Procedimiento Civil, *supra*, dispone que:

> Toda defensa de hechos o de derecho contra una reclamación se expondrá en la alegación responsiva excepto que, a opción de la parte que alega, las siguientes defensas pueden hacerse mediante una moción debidamente fundamentada:
>
> (1) falta de jurisdicción sobre la materia;
> (2) falta de jurisdicción sobre la persona;
> (3) insuficiencia del emplazamiento;
> (4) insuficiencia del diligenciamiento del emplazamiento;
> (5) dejar de exponer una reclamación que justifique la concesión de un remedio;
> (6) dejar de acumular una parte indispensable.
>
> [...]

La referida regla permite que un demandado solicite al Tribunal que desestime la demanda antes de contestarla cuando "es evidente de las alegaciones de la demanda que alguna de las defensas afirmativas prosperará". *Inmobiliaria Baleares, LLC v. Benabe González*, 214 DPR 1109, 1128 (2024); *Conde Cruz v. Resto Rodríguez et al.*, 205 DPR 1043, 1065 (2020). La solicitud debe hacerse mediante una moción y tiene que estar fundamentada bajo los siguientes fundamentos: (1) falta de jurisdicción sobre la materia o [la] persona, (2) insuficiencia del emplazamiento o su diligenciamiento, (3) dejar de exponer una reclamación que justifique la concesión de un remedio, o (4) dejar de acumular una parte indispensable. *Inmobiliaria Baleares, LLC v. Benabe González, supra*, pág. 1128; *Cobra Acquisitions v. Mun. Yabucoa et al.*, 210 DPR

384, 396 (2022); *López García v. López García*, 200 DPR 50, 69 (2018).

Al momento de evaluar una moción al amparo de la Regla 10.2 de Procedimiento Civil, *supra*, R. 10.2, el Tribunal tiene que tomar como cierto los hechos alegados en la demanda y considerarlo de la manera más favorable para el demandante. *Inmobiliaria Baleares, LLC v. Benabe González, supra*, pág. 1129; *Cobra Acquisitions v. Mun. Yabucoa et al., supra*, pág. 396. Para que un demandado prospere ante una moción bajo la Regla 10.2 de Procedimiento Civil, *supra*, tiene que demostrar que el demandante no tiene derecho a remedio alguno bajo cualquier estado de derecho que se pudiera probar en apoyo a su reclamación, aun interpretando de forma liberal la demanda. *Inmobiliaria Baleares, LLC v. Benabe González, supra*, págs. 1129-1130; *Cobra Acquisitions v. Mun. Yabucoa et al., supra*, pág. 396. Ante una moción bajo la Regla 10.2 de Procedimiento Civil, *supra*, R. 10.2, el Tribunal debe examinar si el demandante no tiene derecho a que se ventile el pleito, ya sea al amparo del remedio principal o el alternativo. *Cobra Acquisitions v. Mun. Yabucoa et al., supra*, pág. 397. Si el foro primario resuelve que la demanda no cumple con el estándar de plausabilidad, el tribunal debe desestimar la demanda y no permitir que una demanda "insuficiente proceda bajo el pretexto de que con el descubrimiento de prueba puedan probarse las alegaciones conclusorias". R. Hernández Colón, *Derecho procesal civil*, 6ta ed., San Juan, Ed. Lexis Nexis, 2017, pág. 307.

**B.**

Como parte del debido proceso de ley, es compulsorio añadir a todas las partes que tengan un interés común en un pleito. *Pérez Ríos v. Luma Energy, LLC*, 213 DPR 203, 212 (2023). Este requisito responde a la protección constitucional la cual impide a una persona que no sea privada de su libertad y propiedad sin un debido proceso

de ley y la necesidad de que el dictamen judicial sea emitido en su día completo. *Pérez Ríos v. Luma Energy, LLC, supra*, págs. 212-213, citando a: *RPR & BJJ, Ex parte*, 207 DPR 389, 407 (2021); *Cepeda Torres v. García Ortiz*, 132 DPR 698, 704 (1993).

Como corolario de lo anterior, la Regla 16.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 16.1, estatuye que las personas que tengan un interés común, que sin su presencia no se pueda adjudicar la controversia, serán incluidas como partes en el pleito. Ahora bien, el interés común ha sido interpretado por el Tribunal Supremo como aquel que "no se trata de un mero interés en la controversia, sino de aquel de tal orden que impida la confección de un decreto adecuado sin afectarlo". *Deliz et als. v. Igartúa et als.*, 158 DPR 403, 433 (2003). El planteamiento de parte indispensable se puede presentar en cualquier momento, incluso por primera vez en una apelación. *Pérez Ríos v. Luma Energy, LLC, supra*, pág. 213. Asimismo, el tribunal lo puede levantar motu proprio dado que, ante la ausencia de una parte indispensable, el tribunal carece de jurisdicción para atender el caso. *Pérez Ríos v. Luma Energy, LLC, supra*, pág. 213; *RPR & BJJ, Ex parte, supra,* pág. 407.

**III.**

En el presente caso, la parte apelante realiza cinco (5) señalamientos de error. En particular, argumentó que el foro primario erró al determinar que el Cuerpo de Ingenieros es una parte indispensable en el litigio y al determinar que no adquirió jurisdicción sobre la persona del DRNA. Asimismo, sostiene que el TPI no debió acoger las solicitudes de desestimación del Municipio y la UPR.

Por estar relacionados los señalamientos de error, procederemos a discutirlos en conjunto. Veamos.

De entrada, destacamos que, es sabido que los tribunales debemos ser celosos guardianes de nuestra jurisdicción y no

tenemos discreción para asumir jurisdicción donde no la tenemos. *SLG Szendrey Ramos v. F. Castillo,* 169 DPR 873, 882 (2007); *Morán v. Martí,* 165 D.P.R. 356 (2005). Ante ello, los asuntos jurisdiccionales deben atenderse con mayor premura a cualquier otro asunto. Según pormenorizamos, la falta de parte indispensable en un litigio impide su adjudicación por cuanto priva a los foros judiciales de jurisdicción para entenderlo. La ausencia de una parte indispensable priva al foro judicial de jurisdicción para atender un asunto, por cuanto la adjudicación de este es una incompleta. *Pérez Ríos v. LUMA Energy, LLC, supra,* pág. 212; *RPR & BJJ Ex parte, supra.* Lo anterior toda vez que se verían afectados los intereses de una parte sin el debido proceso de ley exigido y garantizado por nuestro ordenamiento jurídico. *Pérez Ríos v. LUMA Energy, LLC, supra,* pág. 212. En fin, "[l]a falta de parte indispensable incide sobre la jurisdicción del Tribunal, y hemos expresado que, reconocida la ausencia de una parte indispensable, debe desestimarse la acción." *García Colón v. Sucn. González,* 178 DPR 527, 561 (2010) (Rodríguez Rodríguez, opinión concurrente) (énfasis suprimido).

Tras esta Curia realizar un análisis del dictamen apelado, resolvemos que el TPI actuó conforme a derecho al desestimar la causa de acción por falta de parte indispensable y correctamente abstenerse en atender los planteamientos esbozados sobre la falta de jurisdicción sobre la persona del DRNA ni aquellos bajo la Regla 10.2 (5) de Procedimiento Civil, *supra.* Cónsono con lo anterior, concurrimos con el criterio del TPI en atender con mayor premura los asuntos jurisdiccionales. Así pues, cabalmente el foro primario colegió que carecía de jurisdicción para atender los otros asuntos por falta de parte indispensable y, consecuentemente, entender innecesario entrar a discutir el resto de los asuntos esbozados en las solicitudes de desestimación interpuestas ante sí.

En el presente caso, el Cuerpo de Ingenieros es, como correctamente determinó el foro primario, una parte indispensable en el pleito. Nótese que, en el presente litigio, se solicita que sea declarado nulo y se paralice el proyecto de construcción, objeto del Contrato suscrito entre el Cuerpo de Ingenieros y el DRNA. Ante este cuadro, resulta forzoso concluir que los intereses del Cuerpo de Ingenieros se verían directamente afectados por el pleito en el que se litiga la legalidad o ilegalidad del proyecto de construcción que se presta a desarrollar. Más aun, el hecho de que el DRNA, una de las partes contrayentes del Contrato por virtud del cual se desarrolla el proyecto de construcción, figure como una parte litigiosa, hace igualmente patente la conclusión de que la otra parte contrayente del referido convenio debe, necesariamente, figurar como parte.

Asimismo, atisbamos que el planteamiento sobre si el Cuerpo de Ingenieros es una parte indispensable surgió desde el inicio de la causa de acción.[21] De hecho, se desprende del expediente que la parte apelante solicitó la anuencia del foro primario para enmendar la *Demanda* a los fines de incluir tanto al Cuerpo de Ingenieros como al Estado, como partes indispensables,[22] y que, en efecto, acumuló al Estado como codemandado.[23] Igualmente, la parte apelante solicitó la autorización, que le fue concedida, para enmendar la *Demanda* y especificar los remedios solicitados de parte del Municipio y la UPR.[24] No obstante, nunca acumuló al Cuerpo de Ingenieros.

A la luz de los fundamentos esbozados, resulta evidente que la falta de parte indispensable vició la jurisdicción del foro primario, y ello dispone del asunto ante nuestra consideración. En virtud de

---

[21] *Véase* Entrada Núm. 2 del caso SJ2024CV06782 en el SUMAC.
[22] *Véanse* Entradas Núm. 4 y 35 en el caso SJ2024CV06782 en el SUMAC.
[23] Entrada Núm. 37 en el caso SJ2024CV06782 en el SUMAC.
[24] *Véanse* Entradas Núm. 25 y 37 del caso SJ2024CV06782 en el SUMAC.

lo anterior, no es procedente discutir los restantes señalamientos de error.

**IV.**

Por los fundamentos que expusimos anteriormente, se confirma la *Sentencia* apelada.

Notifíquese.

Lo acuerda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones